IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MILLARD E. PRICE, )
)
        Plaintiff, )
)
    v. ) Civil Action No. 16-831-CFC
)
WARDEN DAVID PIERCE, et al., )
)
        Defendants. )

Millard E. Price, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

William Joseph Kassab, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

January 9, 2019
Wilmington, Delaware

## CONNOLLY, U.S. District Judge

### I. INTRODUCTION

Plaintiff Millard E. Price ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 3) Defendants former VCC Warden David Pierce ("Pierce") and Corrections Sergeant Ralph Bailey ("Bailey") ("together "Defendants")[2] move for summary judgment.[3] (D.I. 52) Plaintiff opposes the motion and has filed a motion for leave to file an amended complaint[4] and a request for counsel. (D.I. 58, 59, 66)

### II. BACKGROUND

Two claims survived screening of the Complaint; a First Amendment retaliation claim against Bailey and an Eighth Amendment strip search claim against Pierce.[5] (D.I.

---

[1] When bringing a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] All other defendants were dismissed on December 2, 2016, when the Complaint was screened. (*See* D.I. 9, 10)

[3] Counsel for Defendants is admonished to attach supporting documents and cite to specific pages in support of future motions for summary judgment rather than citing to docket items in general. "[T]he court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011).

[4] Because Plaintiff seeks injunctive relief, he moves to amend to substitute Pierce with the current VCC warden. (D.I. 58). As will be discussed summary judgment is appropriate on behalf of Defendants and, therefore, the motion for leave to amend will be denied as moot.

[5] The Complaint does not raise a Fourth Amendment strip search claim.

1

9, 10) Plaintiff seeks injunctive relief as well as compensatory and punitive damages. (D.I. 3 at 36-40)

Plaintiff was employed in the VCC receiving room from December 1, 2010 to April 18, 2016. (D.I. 63-2 at 9) While working on Friday, April 15, 2016, Plaintiff found a cell phone in a laundry cart. (*Id.* at 10) Plaintiff placed the cell phone on a shelf next to the laundry cart and left work without informing any VCC staff that he found the cell phone. (D.I. 45 at ¶ 5; D.I. 63-2 at 11) When he returned to work on Monday, April 18, 2016, two other inmate workers, Boogie Johnson and Terrell Brown ("Brown"), told him that Bailey was looking for a lost cell phone. (D.I. 36 at ¶ 5; D.I. 63-2 at 11) Plaintiff told the two inmates that he found the cell phone, and that he saw the cell phone on the shelf where he left it on the previous Friday night. (D.I. 63-2 at 11) According to Plaintiff, he gave the cell phone to Brown to turn in because there is "bad blood" between Plaintiff and Bailey. (*Id.*) Plaintiff did not inform VCC staff he had found the cell phone even though he had contact with VCC staff during the weekend. (D.I. 45 at ¶ 8)

On Monday, April 18, 2016, Officer Hollis told Bailey that Plaintiff had given Brown the cell phone to turn in, and Bailey questioned Plaintiff about the phone. (D.I. 35 at ¶ 9; D.I. 36 at ¶¶ 10, 11, 12) When he was being questioned, Plaintiff told Bailey he found the phone in the institutional laundry cart before leaving work on April 15, 2016, and had placed the cell phone on a shelf next to the laundry cart that contained yellow uniforms. (D.I. 35 at ¶ 9; D.I. 63-2 at 13) According to Bailey, when he asked

2

Plaintiff why he did not turn the cell phone in on April 15, 2016, Plaintiff replied that he knew he would have time to turn in the cell phone. (D.I. 35 at ¶ 9; D.I. 46 at ¶ 11)

Bailey then issued Plaintiff a disciplinary report for possession of the cell phone and charged him with the infractions of receiving stolen property, theft, and promoting prison contraband. (D.I. 33-1 at 1; D.I. 36 at ¶ 39) Plaintiff was transferred to "the hole" or pretrial hearing detention. (D.I. 33-1 at 7; D.I. 63-2 at 14) Plaintiff requested a hearing and it was held on April 20, 2016. (D.I. 63-2 at 14-15) Bailey was called as a witness. (*Id.* at 15) Plaintiff was found guilty of theft and promoting prison contraband and sentenced to fifteen days in isolation. (D.I. 33-1 at 2) Plaintiff appealed the decision and it was affirmed on April 25, 2016. (*Id.* at 3-4) The basis for the decision reads: "Inmate Price admitted to finding the cell phone, hiding the cell phone, and then ultimately turning the cell phone in, but not to security staff. Therefore, he is responsible for his actions." (*Id.* at 4) Plaintiff was released from isolation on May 3, 2016. (D.I. 48 at ¶ 6)

Plaintiff alleges the disciplinary report that Bailey authored contained false information and was issued in retaliation for Plaintiff's actions in 2008 when he was a pretrial detainee and worked in the pretrial kitchen in B-Building. (D.I. 3 at 12-13; D.I. 63-2 at 4-5) Bailey was the sergeant in charge of B-Building during this time. (D.I 36 at ¶ 24) Plaintiff submitted a grievance on October 24, 2008, and he also complained about Bailey to Capt. Henry ("Henry") (D.I. 63-2 at 5, 23) Bailey does not recall if Plaintiff complained about him to Henry in 2008, and he denies that he holds a grudge against Plaintiff. (D.I. 36 at ¶ 27, 29) Plaintiff later resigned from the kitchen position

3

and took a different position. (D.I. 63-2 at 8) He and Baily did not cross paths for "a couple of years" and Plaintiff states that when they did, there was always a problem. (*Id.*)

Plaintiff alleges his Eighth Amendment rights were violated when he was housed in isolation for fifteen days because he was subjected to a minimum of three strip searches a day, and the strip searches served no penological interest other than human degradation. (D.I. 3 at 17) Pierce, the VCC Warden during the relevant time-frame, states that when he assumed the warden's position, a standard operating procedure was in place that required cell searches to be conducted of inmates in isolation during each shift and, with cell searches, it was expected that staff would also conduct a strip search. (D.I. 47 at ¶ 3) There were three shifts per day while Plaintiff was housed in isolation. (D.I. 47 at ¶ 4) Pierce states that inmate held in isolation are strip searched for security reasons to ensure inmates have not obtained contraband, given that inmates in isolation still interact or have the opportunity to interact with other individuals, and those interactions are opportunities for inmates to obtain contraband. (D.I. 48 at ¶ 2) Pierce does not have personal knowledge if Plaintiff was strip searched. (D.I. 37 at ¶ 3)

Defendants move for summary judgment on the grounds that: (1) they are immune from suit by reason of Eleventh Amendment immunity; (2) Plaintiff has failed to offer evidence that his exercise of a constitutional right was a substantial motivating factor in Bailey's decision to discipline him and failed to dispute that Bailey would have

4

made the same disciplinary decision; and (3) Plaintiff failed to offer any evidence of malice or evidence that Pierce had personal involvement in any strip search.

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

5

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; see also Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. Anderson, 477 U.S. at 252.

## IV.    DISCUSSION

### A.    Eleventh Amendment

Pierce is sued in his individual and official capacities. Bailey is sued only in his

individual capacity. Nonetheless, both Defendants seek summary judgment on the claims raised against them in their official capacities.

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Accordingly, § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity are barred by the Eleventh Amendment. *See id.* However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted).

The State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, the motion for summary judgment as to the claims raised against Defendants in their official capacities is granted to the extent that Plaintiff seeks monetary damages from them.

## B. First Amendment Retaliation

Plaintiff alleges that Bailey retaliated against him in 2016 for complaints and grievances Plaintiff lodged against Bailey in 2008 when Plaintiff was a pretrial kitchen worker in B-Building and Bailey was the sergeant in charge of that building. According to Plaintiff, the retaliation occurred when Bailey issued a false disciplinary report that charged Plaintiff with three infractions related to a cell phone Plaintiff found on April 15, 2016. Defendants contend summary judgment is appropriate on this issue because there is no genuine issue of material fact as to whether the protected activity was a substantial motivating factor in the decision to draft the disciplinary report and, even if Plaintiff could prove that it was, Bailey would have taken the same disciplinary action as it is reasonably related to the legitimate penological interest of deterring possession of prison contraband.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford–El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981). Proof of a retaliation claim requires Plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220

8

(3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

"In general, 'most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence' because courts afford prison officials 'great deference' in the context of prison disciplinary proceedings." *Whitehead v. Wetzel*, 720 F. App'x 657, 663 (3d Cir. 2017) (quoting *Watson v. Rozum*, 834 F.3d 417, 425 (3d Cir. 2016)). Where the prisoner is found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing, the finding of guilt is considered strong evidence that

9

the misconduct report was issued for a legitimate penological reason. *See Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010); *Romansky v. Stickman*, 147 F. App'x 310, 312 (3d Cir. 2005). A finding of guilt on a misconduct charge, combined with "a meaningful written statement of the evidence relied on and the reasons for the action taken," establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment. *Williams v. Folino*, 664 F. App'x 144, 148-49 (3d Cir. 2016) (quoting *Watson*, 834 F.3d at 426; *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982)). Prison officials are entitled to summary judgment for disciplining a prisoner, even if their actions were motivated by animus, as long as the prisoner's offenses "were so clear and overt" such that there was no genuine issue of material fact that the officials' actions were reasonably related to legitimate penological interests. *Carter v. McGrady*, 292 F.3d at 158-59.

Bailey does not dispute that Plaintiff has satisfied the first and second elements of a prima facie retaliation claim. As to the third prong, the record evidence does not support a finding that the protected activity was a substantial or motivating factor in the issuance of the disciplinary report. The temporal proximity of eight years simply cannot be said to be so close as to be unusually suggestive. *See DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (denying prisoner's retaliation claim, as three months temporal proximity was not unusually suggestive); *see also Keeling v. Barrager*, 2014 WL 1338077, at *9 (M.D. Pa. Apr. 3, 2014) (explaining that courts in civil rights cases have frequently rejected efforts to infer causation from temporal proximity when a span of weeks, months, or years separates the plaintiff's constitutionally protected activity and

the defendant's alleged retaliatory conduct), *aff'd*, 666 F. App'x 153 (3d Cir. 2016). Plaintiff has also failed to show a pattern of antagonism, coupled with timing, to establishing causation for his retaliation claim although he states that whenever he and Bailey crossed paths there were always problems.

Nonetheless, even if the record supported a finding that the 2008 complaints or later "problems" were a substantial motivating factor, the record reflects the disciplinary hearing officer's findings of guilt on two of the three charges were supported by Bailey's testimony and related to a legitimate penological interest in deterring the possession of prison contraband. Further, Plaintiff appealed the findings of guilt and they were upheld on appeal because "Inmate Price admitted to finding the cell phone, hiding the cell phone, and then ultimately turning the cell phone in, but not to security staff."

Accordingly, the Court will grant the motion for summary judgment on the retaliation claim.

### C. Eighth Amendment Strip Searches

Plaintiff alleges that the three daily strip searches during the fifteen days he was held in isolation violated his Eighth Amendment rights. Defendants move for summary judgment on the grounds that Plaintiff failed to offer any evidence that the VCC thrice-daily search policy for inmates in isolation was motivated by malice or that Pierce was personally involved in the strip searches while Plaintiff was held in isolation.

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. *See Parkell v. Danberg*, 833 F.3d 326, 336 (3d Cir. 2016). Plaintiff raises his claim under the Eighth Amendment which

11

guarantees the right to be free from "cruel and unusual punishments." U.S. Const. amend. VIII. Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 WL 1067909 (D.N.J. 2012) ("Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").

"A claim regarding prison conditions 'does not rise to the level of an Eighth Amendment violation unless: (1) the prison official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'" *Parkell v. Danberg*, 833 F.3d at 335 (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). While a visual body cavity search can violate the Eighth Amendment, such a search amounts to cruel and unusual punish only if it is "'undertaken maliciously or for the purposes of sexually abusing an inmate.'" *Id.* at 336 (quoting *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015)).

The undisputed record evidence fails to show that Pierce engaged in malicious behavior as required for an Eighth Amendment violation related to the strip search even when viewing the evidence in the light most favorable to Plaintiff. *See Parkell*, at 336.

12

There is no evidence the searches were conducted in a physically abusive fashion or with excessive force or that they were undertaken maliciously. Instead, the evidence of record indicates the searches were conducted based upon the long-standing BOP policy (that has since been changed) of strip searching an inmate housed in isolation during each shift. Plaintiff fails to point to any evidence of maliciousness and therefore, the search policy cannot serve as a basis for imposing Eighth Amendment liability on Pierce. Accordingly, the Court will grant Defendants' motion for summary judgment on the strip search issue.

## V.   CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motion for summary judgment (D.I. 52); and (2) deny as moot Plaintiff's motion for leave to file an amended complaint and request for counsel (D.I. 58, 59).

An appropriate Order follows.